Judge Tsuchida

FILED ___ ENTERED
LODGED ___ RECEIVED

APR 27 2010

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                          DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD BAFARO, <br> CHRISTOPHER ANDREW NEARY, <br> DARYL PAUL FONTANA, <br> SINISA GAVRIC, <br> CARL ANDREW THIESSEN, <br><br> Defendants. | CASE NO. MJ10-192 <br><br> FELONY COMPLAINT <br><br><br> 10-MJ-00192-CMP |

BEFORE, Brian A. Tsuchida United States Magistrate Judge, Seattle, Washington. The undersigned complainant, being duly sworn, alleges:

### COUNT 1
### (Conspiracy to Distribute Marijuana)

Within the last five years, and continuing until on or about April 27, 2010, at Whatcom County, within the Western District of Washington and elsewhere, RICHARD BAFARO, CHRISTOPHER ANDREW NEARY, DARYL PAUL FONTANA, SINISA GAVRIC, CARL ANDREW THIESSEN, and others know and unknown, did knowingly and intentionally conspire to distribute, marijuana, a substance controlled under Title 21, United States Code, Section 812.

Your complainant further alleges the offense involved at least 50 kilograms of marijuana.

Complaint - 1
United States v. Bafaro, et al./MJ10-192

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

|   |   |
|---|---|
| 1 | All in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and |
| 2 | 846. |
| 3 | 1. I, Shannon L. Hanson, am employed as a Senior Special Agent with United States |
| 4 | Immigration and Customs Enforcement (ICE), and have been so employed since 1998. I am |
| 5 | currently assigned to an air and marine investigations group in Blaine, Washington. I am |
| 6 | responsible for enforcing federal laws concerning narcotics and controlled substance violations. |
| 7 | During my employment as a special agent, I have received professional law enforcement training |
| 8 | in the methods and means used by narcotics traffickers to smuggle, transport, conceal and |
| 9 | distribute narcotics and currency. I also have personally participated in numerous investigations |
| 10 | concerning the illegal importation and distribution of controlled substances into and throughout |
| 11 | the United States; and the use, concealment, and exportation of the proceeds of narcotics |
| 12 | activities. |
| 13 | 2. The following information was obtained either from my personal observations and |
| 14 | knowledge and/or from the observations and knowledge of other law enforcement personnel |
| 15 | assisting in this investigation. |
| 16 | 3. On ~~March~~ April 26, 2010, at approximately 11:00 a.m., federal agents assigned to the |
| 17 | ICE Blaine, Integrated Border Enforcement Team, were investigating the Canyon Creek area of |
| 18 | the Mt. Baker and the Snoqualmie National Forest in the vicinity of Glacier, Washington, where |
| 19 | agents observed snowshoe tracks that crossed the international border. This is an area know to |
| 20 | federal agents as a route used by individuals smuggling contraband and illegal aliens between |
| 21 | Canada and the United States. |
| 22 | 4. At approximately 2:00 p.m., agents encountered two subjects hiding in the woods |
| 23 | near the snowline at Forest Service Road 3140. The two subjects, were later identified as |
| 24 | CHRISTOPHER ANDREW NEARY and DARYL PAUL FONTANA. Both NEARY and |
| 25 | FONTANA initially told agents that they were hiking in Canada, got lost, and unintentionally |
| 26 | crossed the international border into the United States. |
| 27 | 5. During the federal agents' contact with NEARY and FONTANA, a silver Infiniti |
| 28 | SUV drove up to the location. I contacted the driver, identified as CARL ANDREW |

Complaint - 2
*United States v. Bafaro, et al./MJ10-192*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

THIESSEN, and he stated that he was in the area because he was a writer, and wanted a secluded place to write. THIESSEN consented to a search of his rental vehicle, and agents found a deposit slip for $1,000 in currency (listed as ten $100 bills), and an envelope addressed to "Grandma" containing approximately $4000 in United States currency. Agents observed that the rear seats of the rental vehicle had been folded down, creating a cargo holding area. Agents also found several fast food bags from KFC/A&W with two cheeseburgers, and three boxes of fries with chicken tenders. Agents suspected that more individuals might be in the area, and radioed dispatch for additional support.

6. While contacting dispatch, Agent White heard tree branches breaking near the area where the first two subjects were encountered. Agent White responded to the area and discovered another subject, later identified as SINISA GAVRIC, hiding in the brush. Agent White asked GAVRIC if there was anybody else hiding in the woods, and GAVRIC said that he lost his friend in the woods.

7. A helicopter for the Bellingham Air and Marine Branch arrived, and provided air support to ICE agents and Border Patrol agents that arrived to assist in searching the terrain. Myself and Agent White walked further north along Forest Service Road 3140 in a northerly direction and discovered snowshoe tracks leading to the edge of the road. Agent White went into the wood line, and discovered a blue backpack that had been hidden and covered with camouflage on the eastside of the road, approximately 15-20 feet down a steep embankment. Agent White opened the top of the backpack and discovered numerous heat-sealed, clear plastic bags containing a leafy, green substance which, based on my training and experience, was consistent with packaged marijuana.

8. I continued searching in the wood line back towards the south, along Forest Service Road 3140, and discovered another backpack similar to the first, approximately 150 yards east of where the NEARY and FONTANA were encountered. The second backpack also contained clear plastic bags with a leafy, green substance inside of them, identical to the packages found in the first backpack. Agents discovered four separate sets of snowshoes in the area.

Complaint - 3
*United States v. Bafaro, et al./MJ10-192*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

9. Agent White and myself advised other ICE and Border Patrol agents we found two backpacks containing suspected marijuana. Additional ICE and Border Patrol Agents arrived on scene to assist in the search for additional suspects and contraband. Agents, with the assistance of the helicopter, continued to search an area where snowshoe tracks were seen leaving the road, further North along Forest Service Road 3140. Border Patrol Agents discovered two additional backpacks that were hidden in the brush containing heat-sealed, clear plastic bags filled with a leafy, green substance, identical to the first two backpacks recovered.

10. Documents recovered from THIESSEN's vehicle revealed that THEISSEN rented a hotel room at the Best Western Hotel on McLeod Road in Bellingham, Washington. Agent Wallace and Agent Martin conducted surveillance of the hotel and a Toyota 4 Runner parked at the hotel, which was listed on THIESSEN's hotel registration. Information from the hotel registry also revealed that THIESSEN rented a second room. Agents observed a subject, later identified as RICHARD BAFARO, walk up to the 4Runner and look inside the vehicle's window. BAFARO then walked into the Best Western where he was contacted by agents.

11. Agents advised BAFARO of Miranda rights, and BAFARO said that he had been hiking/snowshoeing along Canyon Creek Road (FS Road 3140), and that he and three others had transported marijuana. BAFARO said that he was going to be paid approximately $300 dollars per pound of marijuana smuggled from Canada into the United States, and that he did it because he needed the money.

12. Agent Mills and Agent Moore advised THIESSEN of his Miranda rights, and THIESSEN agreed to speak to agents. THIESSEN said that he was currently living in Vancouver, British Columbia, and that he had crossed into the United States at the Peace Arch Port of Entry at approximately 1030 a.m., and then went directly to the Bank of America to deposit $1,000 dollars in U.S. Currency. THIESSEN said that he then rented an SUV from Hertz Rental Car, and drove up Mount Baker Highway. THIESSEN initially said he was going up to the Mt. Baker area to write, he fell asleep in his vehicle, and then and after he awoke, he drove up into the mountains. THIESSEN said he then ran into some plain clothed guys with guns. THIESSEN said that he rented a different vehicle, than the one he used to cross the border

Complaint - 4
United States v. Bafaro, et al./MJ10-192

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

because the vehicle he used to enter the United States was not running well.

13. Agents asked THIESSEN about the additional room that he reserved at the hotel. THIESSEN then admitted that he did make the reservation for the second room for BAFARO. THIESSEN explained that he picked up hikers in Canada, dropped them in the Cultus Lake area (near the border), and then he was supposed to pick up the hikers after they crossed the border into the United States. THIESSEN said that he just preferred to be the driver. Agents asked THIESSEN how many times BAFARO previously received bags from THEISSEN, and THIESSEN held up two fingers. When asked if that was two times not including today, THIESSEN indicated "yes" by nodding his head. THIESSEN said that he preferred not to know the people that he was working for, because they take social security numbers. THIESSEN said that he usually gets paid approximately $2,000 to $5,000 dollars in U.S. Currency. THIESSEN said that BAFARO usually hikes with the other individuals transporting the marijuana. When asked if BAFARO was one of the hikers today, THIESSEN nodded his head "yes." THIESSEN then wrote a two page statement of outlining his drug smuggling activities and his apology.

14. Agents advised GAVRIC of his Miranda warnings, and GAVRIC agreed to speak with agents. GAVRIC said that he currently lives in Vancouver, British Columbia, and he previously lived in Ottawa. GAVRIC said that he started hiking with two other hikers at approximately 10:00 p.m. the prior night. GAVRIC said that each hiker had a bag of marijuana, and that he was going to get paid $8,000 to 10,000 dollars. GAVRIC said that they had all been dropped off together, after being picked up in East Vancouver in the vicinity of the Broadway and Commercial Intersection. GAVRIC said that he was picked up by a guy in what appeared to be a dark Pathfinder at approximately 9:00 p.m., and that the marijuana was already in the vehicle along with two other hikers. GAVRIC said that he had met "Chris" (NEARY) once before at the Mountain Co-op. GAVRIC said that his bag had a black machete on the side of it. GAVRIC also provided a four page written statement in which he accepted responsibility for his actions.

15. Agents advised FONTANA of his Miranda rights, and FONTANA requested that he have an attorney present, so agents terminated the interview. Approximately, three hours

Complaint - 5
United States v. Bafaro, et al./MJ10-192

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

later, FONTANA re-contacted agents, and indicated he wanted to provide a written statement. FONTANA wrote the following:

> After being advised of my rights to be able to speak with an attorney I have decided to waive those rights and set the record straight. After confessing to a friend that my financials had become tight he suggested I contact someone that he knew that might be able to help. I met Rick [BAFARO] on April 19th of 2010 and he informed me of the potential of making $10,000. That would require me backpacking 25+ pounds of marijuana from Canada across the border in to the U.S. Desperate people sometimes do desperate things and I decided to partake of my own free will in this job. The reason that I changed my mind and have admitted willingly what I have done is because I know I made a mistake and I should pay for that mistake. Funny how things work… Chris, Simisa, and myself almost quit this venture not long after it had begun. The 3 of us had strong reservations about doing this at that became more apparent as this trip progressed. I hope that the laws will look kindly upon these two as I found them both to be respectful and kind. Rick as far as I know was the main facilitator of this job. He organized the buying of equipment, the packing of the marijuana, and the logistics of the transport from Canada to the U.S. I sincerely apologize for knowingly breaking the laws on both sides of the border and I have deep regret at the pain I will have caused family and friends.

This letter was signed Daryl FONTANA and dated April 26, 2010.

16. Agents advised NEARY of his Miranda warnings, and NEARY agreed to speak with agents. NEARY said that he had really "Fucked this one up." NEARY said he didn't know how or why he got involved in this incident. NEARY said that he had been dropped off at 10:00 p.m. or 11:00 p.m. last, and that everyone had a bag to carry, and that he was told that there was marijuana in the bag. NEARY said that he was to be paid by "RICH" or "RICK" (BAFARO). When asked where was he picked up, NEARY said that he was picked up at his house in Vancouver, British Columbia. NEARY said that he needed the money and was pretty broke right now. NEARY said that was first approached about a year ago to backpack. NEARY said that on this occasion, he got into a car, and he wasn't sure whose car it was, but that it was a dark colored SUV. NEARY said that one of the other hikers knew the route. NEARY said that when he arrived in the United States, that there wasn't a vehicle there to pick them up. NEARY said that he was told the bag contained 27 pounds, and that he saw there was marijuana in the packs.

17. Agents recovered four backpacks that were the same make and color that contained a total of 111 heat-sealed plastic bags of a substance that field-tested positive for marijuana. Each plastic bag weighed approximately 545 grams, for a total of 60.49 kilograms.

Complaint - 6
*United States v. Bafaro, et al./MJ10-192*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

Based on my training and experience, agents seized marijuana that totaled at least 50 kilograms.

_____
Shannon Hanson, Special Agent
Immigration and Customs Enforcement

Based on the Complaint and Affidavit sworn and subscribed in my presence, the Court hereby finds that there is probable cause to believe the defendants committed the offense set forth in the Complaint.

Dated this 27 day of April, 2010.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

Complaint - 7
*United States v. Bafaro, et al./MJ10-192*

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970