Judge Theiler

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE, WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>SINISA GAVRIC,<br><br>    Defendant. | Case No.: CR10-0124 MJP<br><br>DECLARATION OF JENNIFER HORWITZ |

1. I was appointed to represent Sinisa Gavric on April 27, 2010. On April 29, 2010, a grand jury returned an indictment against Mr. Gavric charging him with Conspiracy to Distribute at least 50 kilograms of Marijuana, Conspiracy to Import at least 50 kilograms of Marijuana, and Possession with Intent to Distribute at least 50 kilograms of Marijuana.

2. My understanding is that Mr. Gavric is a citizen of Bosnia. He holds a Bosnian passport. He is a legal permanent resident of Canada and came to Canada as a refugee from Bosnia.

3. On May 3, 2010 this Court conducted an arraignment and detention hearing on this case. This Court ordered Mr. Gavric detained. One factor that led the Court to decide Mr. Gavric should be detained was the Court's concern that, if released, Canadian

immigration authorities might deport Mr. Gavric back to Bosnia before the criminal case in the United States is completed.

4. On May 4, 2010 I spoke with Martin Tremblay, an immigration expert at the Canadian Consulate. Mr. Tremblay can be reached at (206) 770-4089. I asked Mr. Tremblay to explain whether a legal permanent resident of Canada might be deported to his country of origin while a criminal case was pending in the United States. Mr. Tremblay gave me the following information:

i) Pursuant to Canadian Immigration Law Section 36(1)(c), a legal permanent resident of Canada could be deported before conviction of a serious criminal offense. The offenses charged in this case qualify as "serious criminal offenses" because they involve more than three kilograms of marijuana and could subject Mr. Gavric to a possible punishment of ten years.

ii) If a legal permanent resident of Canada, accused of such a crime in the United States, arrived at the Canadian border, the border agent would have to write a report that would be sent to Canadian immigration court, that would trigger deportation proceedings.[1]

iii) However, it is unlikely that a legal permanent resident in this situation would actually be deported before the criminal case in the United States was resolved. Deportation from Canada is a long process and the cases are backlogged.[2] In addition, the potential deportee has a right to appeal a deportation order which would further extend the process.

iv) Deportation of a legal permanent resident in this situation would not be inevitable. Although immigration officials would not make a distinction between a legal permanent resident who is a refugee and one who is not for purposes of initiating

---

[1] While Mr. Tremblay could not speak to the issue of whether border agents would allow a legal permanent resident in this situation back into Canada, Mr. Salazar of pretrial services has spoken with border agents and confirmed that someone in Mr. Gavric's situation would be allowed to return to Canada by border authorities.

[2] Mr. Tremblay could not provide more detailed information about the number of months delay or how long from start to finish for Canadian immigration authorities to obtain a final deportation order.

deportation proceedings, someone in Mr. Gavric's position might be eligible for relief from deportation once proceedings began.

5. Mr. Tremblay concluded that, while deportation was a theoretical possibility for someone in Mr. Gavric's situation, it is an unlikely that this would be accomplished while the criminal case in the United States is pending. In short, deportation is not something that would be accomplished suddenly, but would be the result of a protracted process with several phases.

6. Mr. Tremblay declined my request to write a letter for the Court. He indicated he has diplomatic status in the United States and did not want to involve himself directly in a court case. I told Mr. Temblay that I would then make representations about what he told me in a declaration to the Court. I consulted my notes and repeated back to him what he had explained to me. I checked that my understanding of what he told me was correct and he indicated it was correct.

I declare under penalty of perjury under the laws of Washington and the United States that the foregoing is true and correct to the best of my knowledge.

Signed this 5th day of May in Seattle, Washington.

*Jennifer Horwitz*
Jennifer Horwitz